UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 23-cv-14395-ALTMAN

**KEITH ROBERT DOHERTY**,

    *Plaintiff*,

*v.*

**DEPUTY BORROW and
SERGEANT PHILLIPS**,

    *Defendants.*

_____/

## ORDER

On October 8, 2025, we referred this case to U.S. Magistrate Judge Bruce E. Reinhart for a Report and Recommendation on (1) "whether this case should be dismissed without prejudice as malicious under 28 U.S.C. § 1915(e)(2)(b)(i) because of Doherty's failure to disclose his litigation history and/or because Doherty lied in trying to excuse his decision to omit that litigation history," and (2) "in the alternative, whether this case should be dismissed—either with or without prejudice—for Doherty's failure to appear at the July 7, 2025 evidentiary hearing and his subsequent failures to comply with court orders." Amended Order Referring Case [ECF No. 170] at 1–2. Magistrate Judge Reinhart issued a Report and Recommendation ("R&R") [ECF No. 175], in which he recommended that "this case be dismissed with prejudice" because of Doherty's "clear record of delay and contumacious conduct[.]" R&R at 6. As of this writing, Doherty hasn't objected to the R&R. *See generally* Docket. After careful review, we **ADOPT** the R&R in full.

### STANDARD

When a magistrate judge's "disposition" has been properly objected to, district courts must review that disposition *de novo*. FED. R. CIV. P. 72(b)(3). But, when no party has timely objected, "the

court need only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation." FED. R. CIV. P. 72 advisory committee's notes (citation omitted). Although Rule 72 itself is silent on the standard of review, the Supreme Court has acknowledged that Congress's intent was to require *de novo* review only where objections have been properly filed—and not when no party objects. *See Thomas v. Arn*, 474 U.S. 140, 150 (1985) ("It does not appear that Congress intended to require district court review of a magistrate [judge]'s factual or legal conclusions, under a *de novo* or any other standard, when neither party objects to those findings."). In any event, the "[f]ailure to object to the magistrate [judge]'s factual findings after notice precludes a later attack on these findings." *Lewis v. Smith*, 855 F.2d 736, 738 (11th Cir. 1988) (citing *Nettles v. Wainwright*, 677 F.2d 404, 410 (5th Cir. 1982)).

## PROCEDURAL HISTORY

On April 28, 2025, we referred this case to Magistrate Judge Reinhart for an evidentiary hearing and a Report and Recommendation on whether this case should be dismissed without prejudice as malicious under 28 U.S.C. § 1915(e)(2)(B)(i) *either* because of Doherty's "failure to disclose his litigation history" *or* because Doherty later "lied in trying to excuse his decision to omit that litigation history." Order Referring Case [ECF No. 149] at 2. Magistrate Judge Reinhart promptly set an in-person evidentiary hearing for July 7, 2025, at 1:00 P.M. *See* Paperless Order Setting In-Person Evidentiary Hearing [ECF No. 150]. But, on June 20, 2025, Doherty called the Magistrate Judge's chambers *ex parte* and left a voicemail asking him to postpone the hearing. *See* June 23, 2025, Paperless Order [ECF No. 153]. Magistrate Judge Reinhart denied Doherty's request, citing Doherty's repeated "failure to comply with the Federal Rules of Civil Procedure [and] the Local Rules" by seeking relief over the phone rather than via written motion. *Ibid.*[1]

---

[1] Doherty had previously called Magistrate Judge Reinhart's chambers *ex parte* on November 1, 2024, to ask about a status conference, and he was warned at that time that "[f]uture motions must comply with the Federal Rules of Civil Procedure and the Local Rules," that he was not permitted to seek

2

Doherty then "failed to appear" at that July 7, 2025, evidentiary hearing. Paperless Minute Entry [ECF No. 155]. Instead of appearing, Doherty called Magistrate Judge Reinhart's chambers six minutes before the hearing was supposed to start and left a voicemail—something that, as we've seen, he had been *specifically* told never to do again—this time "saying that he [was] unable to attend [the] hearing due to health issues and that he no longer ha[d] access to his [PACER] account." July 7, 2025, Paperless Order to Show Cause [ECF No. 156]. That same day, Magistrate Judge Reinhart ordered Doherty to "file documentation explaining his failure to appear" and to provide proof of his "alleged health issues" and restricted PACER access by July 28, 2025. *Ibid.* The Magistrate Judge also directed the Clerk to *mail* his Order to Show Cause to Doherty, *ibid.*—an instruction with which the Clerk promptly complied, *see* Notice of Compliance [ECF No. 157]. But Doherty *never* responded to that first Order to Show Cause. So, on August 4, 2025, Magistrate Judge Reinhart entered a *second* Paperless Order to Show Cause, directing Doherty to explain (again) why he failed to appear at the July 7, 2025, evidentiary hearing. *See* August 4, 2025, Paperless Order to Show Cause [ECF No. 158]. The Magistrate Judge also warned that Doherty's "[c]ontinued failure to comply with the Court's Orders may result in this Court recommending that [Doherty]'s claims be dismissed with prejudice." *Ibid.*

Doherty eventually responded to that second Order to Show Cause with four filings—each signed on August 5, 2025. *First*, in a "Request for Clarification," Doherty asked us to "clarify all Court orders post-July 7, 2025," and explained that he "was unavailable" on July 7, 2025, because he'd "been suffering [from] blood clots in the brain" and he'd had his PACER access "terminated or suspended"—although he didn't attach any exhibits to prove any of this. Request for Clarification [ECF No. 161] at 1 He separately alerted us to the fact that he'd been recently arrested and placed in the custody of "Seminole County Corrections." *Id.* at 2. *Second*, he filed a "Notice of Change of

---

relief by phone, and that "[f]ailure to comply may result in sanctions." November 4, 2024, Paperless Order [ECF No. 93]. As we'll see, Doherty has flagrantly and repeatedly violated these instructions.

3

Address," showing that he was housed at "John E. Polk Correctional Facility at 211 Eslinger Way, Sanford, Florida, 32773." Notice of Change of Address [ECF No. 160] at 1. *Third*, he asked for "a full copy of the appendix" of this case. Motion to Furnish a Full Copy of the Appendix [ECF No. 159]. On September 8, 2025, Magistrate Judge Reinhart granted this third motion and directed the Clerk to send Doherty a courtesy copy of the docket sheet. *See* Paperless Order [ECF No. 166]. *Fourth*, Doherty filed a Notice of Appeal, challenging "any and all unfavorable decisions made during the time period of July 7, 2025 and August 15, 2025," because he'd "lost contact with the Court" and "believe[d] an order ha[d] been furnished," even though he hadn't received it. Notice of Appeal [ECF No. 162] at 1.

The Defendants filed a Response to Doherty's Request for Clarification. *See* Response [ECF No. 164]. In it, they revealed that, on June 17, 2025, Doherty had been arrested "during a traffic stop for possession of drug paraphernalia and driving with a suspended license." *Id.* ¶ 9; *see also* Arrest Records [ECF No. 164-1] at 3–6. Plus, the Defendants said, on July 8, 2025—the day *after* the evidentiary hearing in this case—Doherty was "caught on surveillance video shoplifting a 65-inch Roku TV from a Target" in Lake Mary, Florida, "and was caught again on July 10 at a different Target" in Sanford, Florida, all of which led "to an investigation [that] culminated in his arrest[.]" Response ¶ 8; *see also* Arrest Records at 1–2. On July 16, 2025, state officers took Doherty into custody "during a loitering and prowling investigation," after which they realized that Doherty "had an active warrant for violating pretrial release conditions relating to his possession and theft charges." Response ¶ 10; *see also* Arrest Records at 7–10. Based on these developments, we amended our referral order—this time asking for a Report and Recommendation *both* because of Doherty's false statements (in his complaint form and in a filing justifying the misstatements on that form) *and*, "in the alternative, whether this case should be dismissed—either *with or without prejudice*—for Doherty's failure to appear at the July 7, 2025 evidentiary hearing and his subsequent failures to comply with court orders." Amended Order Referring Case at 4 (citing FED. R. CIV. P. 41(b)).

4

Magistrate Judge Reinhart then gave Doherty a *third* chance to explain his failure to appear at the July 7, 2025, hearing. And, after learning that Doherty had been released from confinement on October 4, 2025—even though Doherty had "not updated his contact information with the Court"—Magistrate Judge Reinhart ordered Doherty to "either (1) conventionally file a Notice of Current Address with updated contact information, or (2) file a written response that explains why [he] is unable to do so." October 14, 2025, Order to Show Cause [ECF No. 172] at 1–2. The Magistrate Judge directed Doherty to file that Notice "no later than October 28, 2025," and warned him (again) that his "[f]ailure to comply with th[e] Order will result in this Court recommending that this action be dismissed without further notice." *Id.* at 2. [2] Rather than file a Notice of Current Address, though, Doherty submitted a Notice of "Consent by *Pro Se* Litigant (Non-Prisoner) to Receive Notices of Electronic Filing"—thereby electing "to electronically receive Notices of Electronic Filing (NEF)" to his email address. Notice of Consent [ECF No. 174] at 2. At the bottom of that Notice of Consent, Doherty handwrote his current address: "4630 54th Drive, Vero Beach, Florida, 32967." *Ibid.* Notably, Doherty filed this Notice of Consent on October 31, 2025—three days *after* Magistrate Judge Reinhart's deadline to file a Notice of Change of Address had expired.

Magistrate Judge Reinhart issued his R&R on November 12, 2025, recommending that we dismiss Doherty's case *with* prejudice. *See generally* R&R. On November 21, 2025, Doherty filed a "Notice of Objection," in which he advanced no actual objections to the Magistrate Judge's R&R but instead simply asked for an extension of time to file his objections. *See* Notice of Objection at 1 ("The Plaintiff is requesting a short extension to prepare his opposition to dismissal of this cause with

---

[2] That Order to Show Cause was mailed to the John E. Polk Correctional Facility, 211 Eslinger Way, Sanford, Florida, 32773, which was the address our Clerk of Court had on file for Doherty at the time. *See* October 15, 2025, Filing Receipt [ECF No. 182-1]. Under our Local Rules, therefore, the Order was properly served. *See* S.D. FLA. L.R. 11.1(g) ("All Court Orders and Notices will be deemed to be appropriately served if directed either electronically or by conventional mail consistent with information on file with the Clerk of Court.").

Prejudice and for whatever else this court deems just and proper."). We granted that extension request and told Doherty that he must file his objections "by December 15, 2025." December 8, 2025, Paperless Order [ECF No. 178]. We also warned him that, "if he fail[ed] to timely file his objections, we'[d] adopt Magistrate Judge Reinhart's R&R without objection and dismiss his case with prejudice." *Ibid.* But more than 35 days have passed since the expiration of this extended deadline—and yet, Doherty has filed no objections. *See generally* Docket.[3]

## ANALYSIS

Magistrate Judge Reinhart recommends that we dismiss this case with prejudice for four reasons: *first*, because Doherty "fail[ed] to appear at an evidentiary hearing"; *second*, because he's failed to respond to Magistrate Judge Reinhart's orders to "justify his failure to appear"; *third*, because he's "violated the Court's directives by improperly communicating with the [C]ourt"; and *fourth*, because he failed to comply with Magistrate Judge Reinhart's order "to update his address[.]" R&R at 6. Since Doherty hasn't filed any objections, we review the R&R for clear error.

We have "discretion to impose sanctions on a party who fails to adhere to court rules." *Zocaras v. Castro*, 465 F.3d 479, 483 (11th Cir. 2006) (citing FED. R. CIV. P. 41(b)). Dismissal with prejudice under Federal Rule of Civil Procedure 41(b) is appropriate where "the district court finds a clear record of delay or willful conduct and that lesser sanctions are inadequate to correct such conduct." *Betty K Agencies, Ltd. v. M/V Monada*, 432 F.3d 1333, 1337 (11th Cir. 2005). Still, "dismissal of a case with prejudice is considered a sanction of last resort, applicable only in extreme circumstances." *Goforth v. Owens*, 766 F.2d 1533, 1535 (11th Cir. 1985). And "[m]ere negligence or confusion is not sufficient to

---

[3] Rather than file his objections, Doherty submitted an indecipherable Motion for Clarification [ECF No. 179] on December 11, 2025, asking us "to clarify whether we ever answered a notice he filed over a year ago[.]" December 16, 2025, Paperless Order [ECF No. 181]. We denied that motion, saying that we weren't "sure why Doherty ha[d] chosen to re-raise outdated . . . matters rather than timely object to Magistrate Judge Reinhart's Report and Recommendation, which recommends that we dismiss this case with prejudice." *Ibid.* Doherty *never* responded with any objections to the R&R.

justify a finding of delay or willful misconduct." *Zocaras*, 465 F.3d at 483 (citing *McKelvey v. AT&T Techs., Inc.*, 789 F.2d 1518, 1520 (11th Cir. 1986)). For the reasons we outline below, we agree with the Magistrate Judge that dismissal with prejudice is the only appropriate sanction given everything that's transpired in this case.

*First*, Doherty has shown a clear record of delay and willful misconduct. As we'll explain, Doherty's violations have been pervasive, flagrant, and ongoing—starting from the day he filed the Amended Complaint. When Doherty was asked on his complaint form whether he'd "filed other lawsuits in state or federal court otherwise relating to conditions of [his] imprisonment," he answered "N/A" and checked "No." Am. Compl. [ECF No. 5] at 9–10 (cleaned up). But that wasn't true. Doherty had omitted at least one civil case he'd filed in the Eastern District of New York, which was *ongoing* at the time, in which he'd complained about his jail conditions. *See* Compl., *Doherty v. Suffolk Cnty. Jail*, No. 14-CV-02933-FB (E.D.N.Y. May 6, 2014), ECF No. 1 at 2 (alleging that Doherty was "severely beaten up by inmates" and that prison officials failed to protect him, despite knowing that his "safety [was] at risk"). "Given this omission," we said, "this case could be considered malicious and subject to dismissal without prejudice under § 1915(e)." February 12, 2025, Order to Show Cause [ECF No. 131] at 2. So, we asked Doherty to explain why he omitted his litigation history from his complaint form—which he'd submitted under penalty of perjury.

In response to this order, Doherty lied to us *again*. While he "insist[ed] that he misunderstood the question" on the complaint form, Doherty *also* said that his New York civil-rights case was "not filed while [he was] incarcerated." Response to Order to Show Cause [ECF No. 117] ¶ 21. But that wasn't true. When he'd initially filed that case, after all, Doherty noted that his "place of present confinement" was the "Suffolk [County] Jail" in Yaphank, New York. Compl., *Doherty*, No. 14-CV-02933, ECF No. 1 at 2. We thus weren't too pleased with Doherty's response, which appeared to contain a blatant untruth. But we didn't want to sanction Doherty without giving him the opportunity

7

to explain himself under oath and in person. So, hoping to give him one last chance to make things right (and to show that this whole thing was just a big misunderstanding), we referred Doherty to the Magistrate Judge, who promptly scheduled an evidentiary hearing for July 7, 2025. *See generally* Order Referring Case. The purpose of that hearing, we made clear, was for the Magistrate Judge to determine whether Doherty "intentionally omitted his litigation history" from his Amended Complaint and/or whether Doherty had "lied in attempting to excuse his omission." *Id.* at 1–2.

Things only deteriorated from there. As we've seen, when the Magistrate Judge denied Doherty's request to continue that July 7, 2025, evidentiary hearing, Doherty just *skipped* the hearing. And we know that Doherty *knew* the hearing hadn't been cancelled or postponed because he called chambers just a few minutes before the hearing was set to begin, trying to justify his absence with a long list of unlikely excuses. Of course, if Doherty *could* show that he was *truly* unable to attend the hearing, we'd be hard-pressed to find that he engaged in "contumacious" conduct in missing the hearing. R&R at 6. But Doherty hasn't given us *any* good reason for his nonappearance. For one thing, he never verified his Request for Clarification, in which he blamed his nonappearance—without any evidentiary support—on "blood clots," "minor strokes," and "high blood pressure." *See generally* Request for Clarification. Without more information, we don't see how blood clots or high blood pressure could plausibly excuse Doherty's nonappearance. And we have significant reason to disbelieve Doherty's "minor strokes" excuse, since he was apparently seen stealing a television from a Target store just *one day* after the evidentiary hearing—and *a second* TV from a different Target two days later. *See* Arrest Records at 1 (describing the "probable cause" to believe that Doherty committed "retail theft . . . on July 8, 2025, and July 10, 2025," at two different Target stores in Lake Mary and Sanford, Florida, respectively). Of course, as we'll explain, we can adopt Magistrate Judge Reinhart's R&R *without* relying on Doherty's charged criminal conduct—but that charged conduct provides ample, additional evidence of his willful disregard of our orders.

For another, Doherty *still* hasn't complied with Magistrate Judge Reinhart's July 7, 2025, Paperless Order to Show Cause, which directed Doherty to "file documentation explaining his failure to appear and providing proof of any alleged health issues and access issues relating to his [PACER] account." July 7, 2025, Paperless Order to Show Cause. True, Doherty *probably* didn't get actual notice of that July 7, 2025, Paperless Order at the time because the order's filing receipt shows that it was correctly sent on July 7, 2025, to his Kerhonkson, New York, address—the address we had on file for him, *see* July 7, 2025, Filing Receipt [ECF No. 182-2]—even though Doherty was in Florida, where he was arrested on theft charges. But Doherty *has* known about the July 7, 2025, Paperless Order ever since the Clerk sent him a copy of the docket sheet (on September 9, 2025) to the John E. Polk Correctional Facility—where he lived at the time.[4] *See* September 8, 2025, Filing Receipt [ECF No. 182-3]. And, although four months have passed since he received *that* docket sheet, Doherty has made *no effort* to file any "proof" of the supposed health issues he was suffering from in July of 2025. *See generally* Docket. For what it's worth, Doherty has *still* failed to explain why he lied to us about his New York civil-rights case in response to our February 12, 2025, Order to Show Cause, which is what prompted the Magistrate Judge to set the July 7, 2025, evidentiary hearing in the first place. *See generally* Docket.

For these reasons, we find that Doherty's conduct has been willful and unacceptable. Doherty's misrepresentations, his nonappearance at the July 7 evidentiary hearing, *and* his failure to sufficiently explain *either*, demonstrate that he's been "repeatedly and stubbornly defiant" and has "no willingness to comply with court orders." *Moon v. Newsome*, 863 F.2d 835, 838–39 (11th Cir. 1989)

---

[4] Since Doherty was mailed a copy of the docket on September 9, 2025, he's known about the Magistrate Judge's August 4, 2025, Order to Show Cause, in which Magistrate Judge Reinhart observed that Doherty had failed to timely "provide documentation explaining his failure to appear at the July 2025, Evidentiary Hearing" and urged Doherty a *second* time to "show cause why he failed to appear" at that proceeding. August 4, 2025, Paperless Order to Show Cause. In other words, Doherty knows that a federal judge has *twice* asked him to explain (with proof) his nonappearance, and *both* times he's refused to comply.

(affirming dismissal with prejudice where the plaintiff "made no attempt to comply with the sanction order" and did not "ask the court to devise a way for him to comply partially," and because his "conduct and words evidence[d] a refusal to acknowledge the authority of the magistrate"); *see also Smith v. Johnson*, 2013 WL 6835199, at *2 (M.D. Ga. Dec. 20, 2013) (dismissing under Rule 41(b) "with prejudice" where the plaintiff "ha[d] engaged in a pattern [of] willful contempt through his failure to comply with the Court's orders" to respond to a motion to dismiss and through his "failure to appear at his deposition"); *Rosa v. Cook*, 2024 WL 3718264, at *6 (D. Conn. Aug. 8, 2024) (inferring the plaintiff's willfulness from his failure to "come forward with sufficient—and sufficiently documented—reasons" for his "nonappearances" where the plaintiff claimed that "his non-compliance was due to factors beyond his control," like being "locked out of PACER"); *cf. Roman v. City of Reading*, 121 F. App'x 955, 960 (3d Cir. 2005) (observing that the "[a]bsence of reasonable excuses may suggest that the conduct was willful or in bad faith"); *Young Again Prods., Inc. v. Acord*, 459 F. App'x 294, 303 (4th Cir. 2011) ("[S]talling and ignoring the direct orders of the court with impunity is misconduct and must obviously be deterred." (quoting *Mut. Fed. Sav. & Loan Ass'n v. Richards & Assoc., Inc.*, 872 F.2d 88, 93 (4th Cir. 1989))).

That's all more than enough to convince us, especially on clear-error review, that the Magistrate Judge was right to recommend dismissal here. But we'd be remiss not to point out Doherty's *other* inappropriate conduct in this case. For instance, as the Magistrate Judge noted, Doherty has repeatedly and improperly communicated with the Court *ex parte* in violation of several explicit court orders. As we've recounted, at the beginning of this case, we told Doherty that, "if [he] wants relief," he "must file a motion—that is, *a document requesting that relief*—on the Court's docket *and* must furnish copies of that motion to the opposing side*." Order of Instructions to *Pro Se* Litigant [ECF No. 10] ¶ 10 (emphasis added). Despite this clear instruction, Doherty called the Magistrate Judge to request *ex parte* relief by phone. *See* November 4, 2024, Paperless Order. The Magistrate Judge

10

kindly made a one-time exception for Doherty, but he warned Doherty that all future motions must be in writing and filed on the Court's docket. *See ibid.* ("On 11/1/2024, [Doherty] called chambers to inquire about the 11/5/2024 In-person Discovery Status Conference. . . . The Court liberally construes [Doherty]'s response . . . to be an *ex-parte* motion for extension of time. In light of the circumstances, the Court will make a one-time exception and grant [Doherty]'s Motion for Extension of Time. Future motions must comply with the Federal Rules of Civil Procedure and the Local Rules. Failure to comply may result in sanctions.").[5] Doherty ignored these orders again when he called the Magistrate Judge's chambers *ex parte* on July 7, 2025, asking that the evidentiary hearing he'd skipped be rescheduled. *See* June 23, 2025, Paperless Order (denying Doherty's "*ex-parte* Motion . . . for failure to comply with the Federal Rules of Civil Procedure, the Local Rules, and this Court's prior Order").

Doherty has also failed to update us of his new address, despite our clear orders that he do so. At the beginning of this case, we instructed Doherty to "comply with all . . . Local Rules for the Southern District of Florida," told him to "keep the Court informed of [his] *current* address," and warned that, if he "fails to notify the Court of an address change, the Court may dismiss this case without further notice." Order of Instructions to *Pro Se* Litigant ¶¶ 1–2. And our Local Rules require *pro se* parties (like Doherty) to "conventionally file" a Notice of Change of Address "within *seven (7) days* of a change." S.D. FLA. L.R. 11.1(g) (emphasis added). But, after Doherty was arrested, he didn't notify us of an address change for about *three weeks*. *Compare* Arrest Records at 7 (showing that Doherty

---

[5] Because the Magistrate Judge cited the Federal Rules of Civil Procedure and our Local Rules, it's worth quoting what those rules say on this subject. For instance, Federal Rule of Civil Procedure 7(b) provides that "[a] request for a court order must be made by motion," that the motion must "be *in writing* unless made during a hearing or trial," that the motion must "state with particularity the grounds seeking the order," and that the motion must "state the relief sought." FED. R. CIV. P. 7(b)(1)(A)–(C) (emphasis added). Similarly, under our Local Rules, *pro se* parties (like Doherty) "submitting an *ex parte* filing" must "[i]nclude the words '*ex parte*' in the title of the motion," "explain the reasons for *ex parte* treatment," and file their *ex parte* motions "conventionally." S.D. FLA. L.R. 5.4(d)(3). And our Local Rules require that all "motions . . . tendered for conventional (non-CM/ECF) filing" be "plainly *typed or written*"—not made over the phone. S.D. FLA. L.R. 5.1(a)(4) (emphasis added).

was arrested on July 16, 2025), *with* Notice of Change of Address [ECF No. 160] at 2 (signed on August 5, 2025).

Doherty was later released from confinement on October 4, 2025. *See* October 14, 2025, Order to Show Cause at 1 ("Counsel for the Defendants has notified the Court that the Plaintiff was released from custody in Seminole County on or around October 4, 2025. A public records search reveals a surety bond in the Plaintiff' Seminole County case signed on October 3, 2025."). But he waited *four weeks* to update his contact information through a Notice of Consent to Receive NEFs—which isn't the way we've ordered him to update his address. *Compare* Order of Instructions to *Pro Se* Litigant ¶ 2 (ordering that the Notice of Change of Address "include *both* the new address *and* the date on which the new address became effective" and forbidding that Notice from "includ[ing] *any other* information" (emphasis added)), *with* Notice of Consent at 2 (updating his address *without* telling us when it became effective *and* tacking on other irrelevant information, like his consent to receive electronic court filings). By persistently hiding his whereabouts from us, Doherty prejudiced the Defendants, evaded our orders, and failed to prosecute his own case. *See Archie v. Dep't of Corr.*, 2015 WL 333299, at *2 (D.N.J. Jan. 23, 2015) ("Plaintiff's failure to inform the Court or his adversary of his current address and to otherwise correspond with the Court or engage in discovery prejudices Defendants."); *see also Davis v. Shockey*, 2023 WL 11983234, at *3 (M.D. Pa. Jan. 4, 2023) ("Here, Davis's failure to abide by the Court's Order and failure to notify the Court of his current address demonstrates a willful disregard for procedural rules and court directives." (cleaned up)), *report and recommendation adopted*, 2023 WL 11983235 (M.D. Pa. Feb. 2, 2023); *Ward v. Loveberry*, 2024 WL 4229104, at *1 (W.D. Mich. Aug. 19, 2024) ("Plaintiff's failure to provide the Court with his current address constitutes willful disregard of the Court's rules which prejudices Defendant's ability to defend against Plaintiff's claims."), *report and recommendation adopted*, 2024 WL 4227724 (W.D. Mich. Sep. 17, 2024).

Finally, as if all that weren't enough, Doherty once sent a scathing (and wildly inappropriate) email to the Defendants' lawyer, Andrew Jolly, threatening to sue him over alleged "witness tampering" and "false or misleading statements" unless Jolly paid him "$10,000." Doherty's December 19, 2024, Email [ECF No. 121-3] at 1–2. Doherty, in sum, has created a clear record of delay and engaged in a continuous and willful abuse of process. *See, e.g.*, *Germany v. City of Huntsville*, 2024 WL 126816, at *9 (11th Cir. Jan. 11, 2024) (agreeing that the plaintiff showed a "clear pattern of . . . willful contempt" warranting dismissal with prejudice under Rule 41(b) where he "threaten[ed] defense counsel," "fail[ed] to attend a pretrial conference," "falsely accus[ed] defense counsel of perjury," and "repeatedly def[ied]" court orders).

*Second*, we find no clear error in the Magistrate Judge's conclusion that, in the tortured circumstances of this case, lesser sanctions aren't appropriate. Magistrate Judge Reinhart made this finding implicitly—and we now make it explicitly. *See Gratton v. Great Am. Commc'ns*, 178 F.3d 1373, 1374 (11th Cir. 1999) ("Dismissal under Rule 41(b) is appropriate where there is . . . an implicit or explicit finding that lesser sanctions would not suffice."). Since Doherty is proceeding *in forma pauperis*—and given that his lawsuit is "already being subsidized"—we're "not required to select a sanction other than dismissal[.]" *Moon*, 863 F.2d at 839. In any event, there's "no evidence in the record that [Doherty] has the ability to pay a monetary sanction or that, even if he does, he would abide by an order requiring that he pay such a sanction." *Tobias v. Two Recs. of Lien*, 2001 WL 1871161, at *4 (M.D. Fla. Nov. 13, 2001) (Hall, J.); *see also ibid.* (imposing a filing injunction "preclud[ing] [the plaintiff] from filing future complaints" for his Rule 11 violations and finding that monetary sanctions weren't sufficient).

In short, Doherty has defied *several* court orders and has repeatedly violated our Local Rules, even after being warned that his conduct would result in dismissal. *See, e.g.*, Order of Instructions to *Pro Se* Litigant ¶ 1 ("The Plaintiff's failure to comply with the federal and local rules may result in

13

sanctions, which could include dismissal of the case."); *id.* ¶ 14 ("If the Plaintiff fails to [pursue his case], the Court may dismiss the case for lack of prosecution. In fact, the Plaintiff's failure to comply with any court order may result in dismissal."); August 4, 2025, Paperless Order to Show Cause ("Continued failure to comply with the Court's Orders may result in this Court recommending that Plaintiff's claims be dismissed with prejudice."). We therefore find no clear error on the face of the R&R and adopt it in full. *Cf. Amerson v. Comm'r, Ga. Dep't of Corr.*, 2022 WL 628418, at *5 (11th Cir. Mar. 4, 2022) ("Amerson repeatedly defied court orders and acted in bad faith. After being warned that his actions could result in dismissal, that's exactly what happened. Making good on that threat of dismissal was not an abuse of discretion."); *Link v. Wabash R.R. Co.*, 370 U.S. 626, 629 (1962) ("The authority of a federal trial court to dismiss a plaintiff's action with prejudice because of his failure to prosecute cannot seriously be doubted.").

\*     \*     \*

Accordingly, we **ORDER and ADJUDGE** that the Report and Recommendation [ECF No. 175] is **ACCEPTED and ADOPTED** in full. This case is **DISMISSED with prejudice** because of Doherty's willful, flagrant, and repeated failure to comply with court orders. *See* FED. R. CIV. P. 41(b). All pending motions are **DENIED as moot**, and all deadlines are **TERMINATED**. The Clerk of Court shall **CLOSE** this case.

**DONE AND ORDERED** in the Southern District of Florida on January 21, 2026.

                                                    **ROY K. ALTMAN**
                                                    **UNITED STATES DISTRICT JUDGE**

cc:     Keith Robert Doherty, *pro se*